United States District Court
Central District of California

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ruben Garcia et al,<br><br>Plaintiffs,<br><br>v.<br><br>Healthcare Services Group, Inc. et al,<br><br>Defendants. | 2:19-cv-03869-VAP-AFM<br><br>**Order DENYING Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. 23).** |

Before the Court is Plaintiffs' unopposed motion for preliminary approval of a class action settlement (the "Motion"). (Dkt. 23). After considering all papers filed in support of, and in opposition to, the Motion, the Court DENIES the Motion.

### I. BACKGROUND

Ruben Garcia, Gilberto Lopez, Luis Hernandez, Maria Guttierez, Maria Mota, Nora Lucha, Raquel Rosas, and Soira Perez (collectively, "Plaintiffs") are current or former housekeeping and laundry staff employed by Defendants Healthcare Services Group, Inc. and HCSG West LLC (together, "Defendants"). (*Id.* at 6). Seeking to represent "[a]ll non-exempt employees employed by Defendants at Glendora Canyon Transitional Care Unit . . . at any time from February 20, 2015 through May 31, 2019" (*id.* at 11), Plaintiffs allege the following claims: (1) meal break violations, (2) rest break violations, (3) wage statement violations, (4) wage and hour violations, (5) unfair competition, and (6) penalties under California's Private Attorneys General Act ("PAGA") (*id.* at 6).

1

Plaintiffs filed this lawsuit in the Superior Court of California, County of Los Angeles on February 20, 2019. (Dkt. 1 at 2). On May 3, 2019, Defendants removed the action to federal court. (*Id.* at 1). After an informal exchange of information, the parties engaged in private mediation with Hon. Carl West (Ret.) on November 5, 2019 and emerged with the proposed settlement they now seek the Court's approval of. (Dkt. 23 at 6).

The proposed settlement provides a gross settlement amount of $137,500, payable by Defendants. (Id. at 9). Of this amount, Plaintiffs' counsel requests an award of one-third to cover attorney fees ($45,833.33), costs not to exceed $10,000, class representative enhancements of $2,000 to each named plaintiff ($16,000 total), settlement administration costs of $7,500, and the PAGA allocation of $7,500. These deductions would result in a net settlement amount of approximately $50,666.67 to distribute among approximately 27 class members.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

Where a class has not yet been certified, parties seeking preliminary approval of a settlement must move simultaneously for certification of a settlement class. 4 W. Rubenstein, Newberg on Class Actions § 13:12 (5th ed. 2019) (hereafter, "Newberg"). Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

At the preliminary approval stage, the Court considers whether the proposed settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, 2016 WL 7479380, at *8 (C.D. Cal. Sept. 12, 2016) ("At the Preliminary Approval phase, the Court need only decide whether the settlement is *potentially* fair."); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

### III. DISCUSSION

#### A. Conditional Certification Under Rule 23

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 320 (C.D. Cal. 2015) (citing *Crown, Cork & Seal*

*Co. v. Parker*, 462 U.S. 345 (1983)). Under Rule 23, a district court may certify a class only if

> "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. Proc. 23(a). In addition, a district court must also find that at least one of the following three conditions is satisfied:

> "(1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (quoting Fed. R. Civ. Proc. 23(b)).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350. *See also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 ("the party seeking certification . . .

bears the burden of showing she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)"); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The court can only certify a class if the court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160–61 (1982). Indeed, federal courts must pay "undiluted, even heightened, attention" to class certification requirements in a settlement context. *Amchem Prod.*, 521 U.S. at 620.

### 1. Numerosity

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific number requirement, as the Court may examine the specific facts of each case. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594 (E.D. Cal. 1999). "As a general guideline, however, a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." 1 Newberg at § 3:12. In the "grey area" between 20 and 40 putative class members, "courts consider factors such as 'the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought.'" *Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*, 303 F.R.D. 337, 345 (E.D. Cal. 2014) (quoting *Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810 (1982)).

Here, Plaintiffs allege there are approximately 27 putative class members, a figure squarely in the "grey area." (Dkt. 23 at 11). Despite their uncertain standing, however, Plaintiffs proffer no facts or arguments in support of numerosity. (*See id.*). They merely assert they are "above the absolute minimum requirement of at least 21 class members" and "[t]hus, numerosity is satisfied." (*Id.*). Plaintiffs apparently fail to appreciate that the party seeking certification bears the burden of satisfying the Court's "rigorous analysis" under Rule 23, *Zinser*, 253 F.3d at 1186; *Falcon*, 457 U.S. at 160–61.

Plaintiffs' conclusory arguments do little more than recite the elements of Rule 23(a)(1) and therefore fail to carry the burden. Moreover, the Court is not persuaded that joining 27 persons would be impracticable, particularly given without evidence to suggest whether geographical diversity and the ability of claimants to prosecute individual suits weigh in favor of numerosity.

2. Commonality

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is liberally construed, and the existence of even a single common legal and factual issue is sufficient to satisfy it. *See Dukes*, 564 U.S. at 359; *see also Hanlon*, 150 F.3d at 1019 ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively."). As the Ninth Circuit has noted: "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. The common

contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citations and quotation marks omitted).

Plaintiffs spend exactly one sentence arguing commonality is satisfied. They assert "[t]he missed rest and meal breaks, wage violations based on the rounding policy, and wage statement violation issues are common to the class." (Dkt. 23 at 11). Although there may, in fact, be several questions of law and fact common to the putative class, Plaintiffs' threadbare Motion fails to describe how the "issues" it identifies are questions amenable to class-wide adjudication. Plaintiffs' single-sentence commonality analysis and the background provided in Section II of the Motion (*id.* at 6–9) do not suffice to meet Plaintiffs' burden to "affirmatively demonstrate . . . compliance" with Rule 23, *see Dukes*, 564 U.S. at 350.

3. Typicality

Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have

7

been injured by the same course of conduct. "Typicality" refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal citations and quotation marks omitted). In practice, the commonality and typicality requirements "tend to merge," meaning the analysis is similar for both. *Dukes*, 564 U.S. at 349 n.5.

Plaintiffs fail to demonstrate the class representatives' claims are reasonably co-extensive with those of absent class members. The class representatives all "worked in housekeeping and laundry at" Glendora Canyon Transitional Care Unit (Dkt. 23 at 6); the putative class, however, includes "all non-exempt employees" (*id.* at 11). The Motion offers no basis for concluding the injuries allegedly suffered by Defendants' housekeeping and laundry employees are typical of all non-exempt employees, or whether the latter were in fact subject to the same policies and practices as the class representatives. Plaintiffs' conclusory contention that the "eight plaintiffs' claims are typical of the class members' claims, as they arise from the same practices at Glendora Canyon that gave rise to the claims of other class members, and their claims are based on the same legal theories" (*id.* at 12) is insufficient. Accordingly, the Court finds Plaintiffs have not carried their burden of demonstrating typicality.

4. <u>Adequacy</u>

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy of representation requirement set forth in Rule 23(a)(4) involves a two-part inquiry: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

1 members and (2) will the named plaintiffs and their counsel prosecute the action
2 vigorously on behalf of the class?'" *In re Northrop Grumman Corp. ERISA Litig.*,
3 2011 WL 3505264, at *14 (C.D. Cal. Mar. 29, 2011) (quoting *Hanlon*, 150 F.3d at
4 1020). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of
5 interest between named parties and the class they seek to represent. [A] class
6 representative must be part of the class and possess the same interest and suffer the
7 same injury as the class members." *Amchem Prod.*, 521 U.S. at 625–26 (citations
8 and quotations omitted). The adequacy of counsel prong of Rule 23(a)(4) considers
9 whether counsel is "qualified, experienced, and generally able to conduct the
10 litigation," 1 W. Rubenstein, Newberg on Class Actions § 3:72 (5th ed. 2019)
11 (citing *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)), and will
12 "prosecute the action vigorously on behalf of the class," *In re Mego Fin. Corp. Sec.*
13 *Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

15 Plaintiffs argue "[t]hese requirements are met based on Frontier Law
16 Center's attorneys' counsels' class action experience, the fact that the plaintiffs have
17 no antagonistic interests to the class, and the action was prosecuted vigorously and
18 thoroughly to reach the settlement." (Dkt. 23 at 12). This bald assertion is
19 unpersuasive. As to the class representatives, Court is aware of no conflicts that
20 would undermine adequacy but, for the reasons discussed throughout this Opinion
21 (*e.g.*, Plaintiffs' conclusory arguments and a lack of evidence), has no basis for
22 concluding adequacy exists.

24 As to class counsel, the Court has more serious reservations. "[I]n a class
25 action, it is primarily class counsel, not the class representative, who controls the
26 class's interest. The quality of that counsel is therefore paramount, as an entire

class's claims might succeed or fail depending on their abilities." 1 Newberg at § 3:72. Because absent class members have little role in choosing the attorney who will represent them, and class representatives are often "unlikely to have the resources or capacity to do so," "judges provide the primary oversight of class counsel." *Id.* Accordingly, the Court closely scrutinizes whether the requirements of Rule 23(a)(4) and 23(g) are met here.

The factors a court must consider in appointing class counsel under Rule 23(g)(1) weigh against adequacy. These are: (1) the work counsel has done in identifying or investigating potential claims in the potential action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. The second and third factors—relating to the experience and substantive knowledge of counsel— find no support in the record here. Plaintiffs offer no evidence that class counsel has ever conducted a class action, much less developed an expertise, and neither does the Declaration of Adam Rose, lead attorney for class counsel. (*See generally* Dkts 23, 23-1).

The first and fourth factors ask whether aspiring class counsel have and will continue to litigate plaintiffs' claims zealously. Plaintiffs offer only the naked assertion that "the action was prosecuted vigorously and thoroughly," with no facts—or even context—to support it. The meager contents of the Motion, for instance, indicate a lack of diligence. Courts have found that a record of poor performance in the current litigation, such as conclusory assertions regarding the requirements for class certification or the elements of the plaintiffs' claims without

any supporting argument, may indicate inadequate representation. *See Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 508 (S.D. Ind. 1999) (finding that class counsel "demonstrate[d] a questionable ability . . . to adequately represent a putative class action" where she "provided us with no specifics regarding her ability, experience, or resources to adequately represent the putative class in this matter" and the motion for certification "d[id] little more than recite the elements of Rule 23 to establish the appropriateness of a class action."); *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 602 (S.D.N.Y. 1992) (denying certification in part due to the inadequacy of counsel's briefing, finding that "Plaintiff's memorandum in support of class certification provides little more than a recitation of the requirements of Rule 23 and conclusory statements that the requirements are met in this case.").

More troubling, the sequence of events leading up to the proposed settlement suggests class counsel has devoted little time or effort to this lawsuit. Plaintiffs' complaint, filed February 20, 2019, sought to represent "all non-exempt personnel *in California* who worked or still work for Defendants." (Dkt. 1-2 at 8 (emphasis added)). Based on this proposed class, Defendants' notice of removal stated the putative class contained approximately 11,292 members and claims worth up to $34,564,716.08. (Dkt. 1 ¶¶ 7, 17). In the months preceding mediation, the parties conducted no motion practice or formal discovery and only engaged in "an informal exchange of information" (the nature of which the Motion does not describe). (Dkt. 23 at 6). The relatively modest terms of the settlement now before the Court are difficult to square with the claims initially made by Plaintiffs, especially given the lack of negotiation and discovery leading up to mediation. Two possible explanations for the enormous discrepancy between the removal papers and proposed settlement present themselves (though the Court is mindful others are

plausible)—that counsel either never intended to represent a state-wide class, or that it offered little resistance to defense counsel. Even if neither is true, the Court cannot say based on the record that class counsel devoted adequate effort to identifying or investigating potential claims or committed adequate resources to this case, as required by Rules 23(a)(4) and 23(g)(1).

As noted above, federal courts assume a responsibility for safeguarding the interests of absent class members and must pay "undiluted, even heightened, attention" to class certification requirements in a settlement context, *see Amchem Prod.*, 521 U.S. at 620. One of the concerns that arises in this context is to ensure class counsel prioritize the best settlement for the class, rather than merely one profitable for counsel. *See* Phillips & Stevenson, Rutter Group Prac. Guide: Fed. Civ. Pro. Before Trial, Calif. & 9th Cir. Editions § 10:788 (2019) ("Courts scrutinize carefully the adequacy of representation in a settlement class in order to protect the interests of absent class members *and to guard against collusion* between plaintiffs' and defense counsel. Plaintiffs' counsel may be attempting to secure payment of their fees; while defense counsel may be attempting to obtain expansive protection from new lawsuits." (emphasis in original)); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 788 (3d Cir. 1995) ("[S]ettlement classes create especially lucrative opportunities for putative class attorneys to generate fees for themselves without any effective monitoring by class members who have not yet been apprised of the pendency of the action.").

The Court finds Plaintiffs fail to satisfy the requirements for conditional class certification and therefore need not reach the predominance and superiority elements of Rule 23(b)(3).

### B. Evaluation of Proposed Settlement

Before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris*, 2011 WL 1627973, at *7. Because the Court cannot conditionally certify the proposed class, it only briefly addresses the first and fourth factors.

#### 1. The Settlement Process

The first factor the Court examines is the means by which the parties arrived at settlement. There is a presumption of fairness where a settlement is the product of an arms-length negotiation "conducted by capable and experienced counsel." *Roe v. SFBSC Management, LLC*, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017). Additionally, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)). Here, the parties arrived at the proposed settlement following mediation with Hon. Carl West on November 5, 2019. (Dkt. 6 at 17). The involvement of Judge West weighs strongly in favor of finding the settlement was "the product of serious, informed, non-collusive negotiations." *Harris*, 2011 WL 1627973, at *7. Nevertheless, as discussed

previously, the Court has reservations about the experience and capabilities of class counsel. The Court treats this factor as neutral.

### 2. Range of Possible Approval

Whether a settlement "falls within the range of possible approval," depends on "substantive fairness and adequacy," and the court should "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080. The burden is on counsel proposing the settlement to show that the settlement is adequate. *Philliben v. Uber Techs., Inc.*, 2016 WL 4537912, at *9 (N.D. Cal. Aug. 30, 2016). Here, Plaintiffs assert the proposed settlement is informed by documents gathered in the informal exchange with Defendants, including a sampling of time records. Plaintiffs also contend they "analyzed the potential monetary value of the claims if they were to succeed at trial. . . . With the approximately 3,100 workweeks during the class period and an estimated net settlement amount of $50,667.67, the 27 class members will receive an average settlement amount of about $1,876.54, which is well with the range of their possible recovery." (Dkt. 23 at 15).

Plaintiffs' analysis falls short. The Motion fails to state the putative class's expected recovery or Defendants' maximum liability exposure for the claims alleged. (*See generally id.*). Thus, the Court is unable to evaluate properly the gross settlement amount. The declaration of Plaintiffs' counsel states a "liability analysis showed that the highest possible number if the case were successful at trial is close to $300,000." (Dkt. 23-1 ¶ 14). It does not, however, give any indication of how this figure was derived or describe the analysis performed, leaving the Court unable to determine whether $137,500 is within the range of possible approval.

Accordingly, the Court cannot find the proposed settlement is fair, adequate, and reasonable.

### IV. CONCLUSION

The Court therefore DENIES the Motion. Counsel for both parties are directed to submit briefing, **by no later than March 9, 2020**, on whether the Court has subject matter jurisdiction of this action, given the lack of explanation for the discrepancy between the class size and damages sought in the initial complaint and instant Motion.

**IT IS SO ORDERED.**

Dated: 2/28/20

Virginia A. Phillips
Chief United States District Judge