Adam Rose (210880)
adam@frontierlawcenter.com
FRONTIER LAW CENTER
23901 Calabasas Road, #2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

Attorneys for Plaintiffs
Ruben Garcia, et al.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN GARCIA, GILBERTO LOPEZ, LUIS HERNANDEZ, MARIA GUTIERREZ, MARIA MOTA, NORA LUCHA, RAQUEL ROSAS, and SOIRA PEREZ, individually and on behalf of all others similarly situated and all aggrieved employees, | Case No.:    2:19-cv-03869-VAP (AFMx) |
| Plaintiffs, | [Assigned for all Purposes to Chief Judge Virginia A. Phillips] |
| vs. | **PLAINTIFFS' NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF ADAM ROSE; [PROPOSED] ORDER** |
| HEALTHCARE SERVICES GROUP, INC., HCSG WEST, LLC, and DOES 1 to 100, inclusive, | Date:  June 1, 2020<br>Time: 2:00 p.m.<br>Ctrm: 8A |
| Defendants. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on June 1, 2020 at 2:00 p.m. or as soon thereafter as may be heard in Courtroom 8A of the Central District of California located at 350 W. First Street, Los Angeles, CA 90012, Plaintiffs will move the court for preliminary approval of the class action settlement pursuant to Fed. R. Civ. Pro. 23(e). The motion

is based on this renewed notice, the memorandum of points and authorities, the declaration of Adam Rose and its exhibits, pleadings on file, and oral arguments at the hearing.

Date: April 27, 2020                          FRONTIER LAW CENTER


                                              /s/ Adam Rose
                                              Attorney for Plaintiffs
                                              Ruben Garcia, et al.

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

## Cases

*Ansari v. New York Univ*. (SD NY 1998) 179 FRD 112, 115..................................................7

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1040 (2012), ..............................10

*Churchill Village v. General Electric*, 361 F.3d 566, 576-577 (9th Cir. 2004). ...............................6

*Custom LED, LLC v. eBay, Inc*., No. 12-cv-00350-JST, 2013 WL 6114379 ..................................19

*Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 4999953 ...................................6

*Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal.App.5th 1239 (2019)................................10

*Harris v. Vector Mktg. Corp*., No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 ....................6

*In re Netflix Privacy Litig*., No. 5:11-cv-00379-EJD, 2013 U.S. Dist. LEXIS 37286....................6

*In re Northrop Grumman Corp. ERISA Litig*., 2011 WL 3505264 at *14 (C.D. Cal. Mar. 29, 2011) ..........................................................................................................................................12

*In re Tableware Antitrust Litig*., 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007). ...........................16

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) ........................................14

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*, 268 F.R.D. 670, 675 (E.D. Wa. 2010) ...........................................................................................7

*Miller v. Ghirardelli Chocolate Co*., No. 12-CV-04936-LB, 2015 WL 758094 ..........................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004)..............6

*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, 303 F.R.D. 337, 345 (E.D. Cal. 2014) .........................................................................................................................7

*Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993) ........................................................7

*See's Candy Shops, Inc. v. Superior Court*, 210 Cal.App.4th 889 (2012),........................9

*Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003).................................................6

*Tijero v. Aaron Bros., Inc*., No. C10-01089-SBA, 2013 WL 60464 ..............................................19

*Utnes v. Home Depot U.S.A., Inc*., 2017 WL 5591863, at *2-3 (N.D. Cal. Dec. 4, 2017) .............10

*Vinh Nguyen v. Radient Pharm. Corp*., No. 11-cv-00406, 2014 WL 18022393 ...........................19

*Wang v. Chinese Daily News, Inc*., 737 F.3d 538, 545 (9th Cir. 2013)................................14

## Statutes

Cal. Lab. Code § 512.............................................................................................................10

Fed. R. Civ. Proc. 23 ............................................................................................... passim

## Treatises

Manual for Complex Litig., Third, § 30.41 (1995)..............................................................6

Reaching Out to the Most Insular Minorities: A Proposal for Improving Latino Access to the American Legal System, 39 Harv. C.R.-C.L. L. Rev. 543 (2004)................................................8

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

Table of Contents

I. INTRODUCTION AND PROCEDURAL HISTORY.........................................................5

II. THE COURT SHOULD PRELIMINARY APPROVE THE SETTLEMENT ..................6

    A.      NUMEROSITY ...................................................................................7

    B.      COMMONALITY AND TYPICALITY .............................................9

          1.      ROUNDING CLAIM ............................................................10

          2.      MEAL AND REST BREAK CLAIMS ................................11

          3.      DERIVATIVE CLAIMS ......................................................13

    C.      ADEQUACY ......................................................................................13

    D.      PREDOMINANCE..............................................................................15

    E.      SUPERIORITY..................................................................................16

III. EVALUATION OF PROPOSED SETTLEMENT ......................................................17

    A.      COSTS, RISKS, AND POSSIBLE DELAY OF TRIAL AND APPEAL ......17

    B.      THE RELIEF PROVIDED TO THE CLASS IS ADEQUATE ....................17

IV. THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES........................................20

V. THE SETTLEMENT DOES NOT UNFAIRLY GRANT PREFERENTIAL TREATMENT TO ANY CLASS MEMBERS ...........................................................20

VI. CONCLUSION............................................................................................................21

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This case arises from Plaintiffs' work at the Glendora Canyon Transitional Care Unit ("Glendora Canyon"), which is a rehabilitation facility located in Glendora, California. Plaintiffs worked as housekeeping, laundry, and janitorial employees at the facility. Plaintiffs were employed by defendants Healthcare Services Group, Inc. and HCSG West LLC (together, "Defendants"), which employ housekeepers, laundry workers, janitors, cooks, dietary aides, and dishwashers at hundreds of medical facilities throughout California.

Plaintiffs uniformly alleged that they were impeded from taking breaks due to directives from their supervisor and that they were denied minimum and overtime wages, in part due to an uneven rounding policy. PAGA letters were sent to both defendants on October 12, 2018. The case was then filed in Los Angeles Superior Court on February 20, 2019, Case No. 19STCV05401. The complaint alleges six causes of action: 1) meal break violations, 2) rest break violations, 3) wage statement violations, 4) wage and hour violations (i.e., minimum and overtime wage violations), 5) unfair competition, and 6) PAGA penalties. The case was removed to federal court on May 3, 2019.

Following removal, the Parties engaged in several telephonic meet and confers regarding the direction of the case. During these meet and confers, defense counsel informed Plaintiffs' counsel that the majority of Defendants' non-exempt employees in California had signed arbitration agreements, including some of the named Plaintiffs, such that Defendants intended to move to compel Plaintiffs' claims to arbitration and to stay the remaining claims pending arbitration. Defense counsel also consistently asserted that Defendants' statewide wage and hour policies were lawful as written and as implemented.

After these phone calls the parties engaged in an informal exchange of information, which included Defendants' various California Employee Handbooks in

effect during the putative class period, the collective bargaining agreement to which Plaintiffs and the other employees at Glendora Canyon were subject, a list of all individuals employed by Defendants at Glendora Canyon during the class period, along with their complete timesheets, punch records, and payroll records, as well as a sample of the arbitration agreements signed by the employees. The Parties mediated this matter with Hon. Carl West (Ret.) on November 5, 2019 and agreed to settle this matter on behalf of the Plaintiffs and all other non-exempt employees that worked at Glendora Canyon during the class period for $137,500. There are 27 identified class members for the period from February 20, 2015 through August 30, 2019.

On January 24, 2020, Plaintiffs filed a motion for preliminary approval of the settlement, which the Court denied following the February 24, 2020 hearing thereon. On April 10, 2020, the Court granted the Parties leave to file a renewed motion.

Therefore, the Parties file this renewed motion requesting that the Court preliminarily approve the settlement agreement, and enter an order: 1) granting preliminary approval, 2) certifying a settlement class, 3) approving the manner and form of providing notice to the class, 4) appointing Frontier Law Center as class counsel, 5) appointing Phoenix Class Action Administration Solutions as the settlement administrator, and 6) setting a final approval hearing date.

## II.    THE COURT SHOULD PRELIMINARY APPROVE THE SETTLEMENT

Approval under Fed. R. Civ. Pro. 23(e) involves a two-step process in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice to the class members, whether final approval is warranted. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004) citing Manual for Complex Litig., Third, § 30.41 (1995).

At the preliminary approval stage where the parties have reached a settlement prior to class certification, the court must peruse the proposed compromise to ratify

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

both the propriety of class certification for settlement purposes and the fairness of the settlement. *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 4999953, at *4 (N.D. Cal. Aug. 21, 2015) citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

The court may grant preliminary approval of a settlement and direct notice to the class if the proposed settlement: 1) appears to be the product of serious, informed, non-collusive negotiations, 2) has no obvious deficiencies, 3) does not improperly grant preferential treatment to class representatives or segments of the class, and 4) falls within the range of possible approval … closer scrutiny is reserved for the final approval hearing. *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *23-24 (N.D. Cal. Apr. 29, 2011).

Further, "[c]ourts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-cv-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013); *see also* Newberg, § 11.41.   Counsel's opinion that the settlement is fair and reasonable is entitled to great weight. *Churchill Village v. General Electric*, 361 F.3d 566, 576-577 (9th Cir. 2004).

Here, the settlement was negotiated and reached by counsel experienced in wage and hour law and following a mediation with respected mediator Hon. Carl West (Ret.).  Further, as set forth below, the settlement is fair and reasonable, and meets each of Rule 23's requirements for conditional certification.

A. **NUMEROSITY**

Fed. R. Civ. Pro. 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  There is no uniform numerical threshold to meet this requirement, and the specific facts of each case must be examined.  *General Te. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).  Plaintiffs seek conditional certification of a

class consisting of 27 class members, a class size which the Court recognizes is in the "grey area" between 20 class members (at which point a class will likely not be certified) and 40 class members (at which point numerosity will presumably be met). (Dkt. 27 at 5:14-6:2.)

For cases in the gray area, courts consider various factors to determine whether numerosity is met, such as the judicial economy that will arise from multiple actions, the geographic dispersion of members in the proposed class, the financial resources of those members, the ability of the members to file individual suits, and requests for prospective relief that may have an effect on future class members. *Ansari v. New York Univ.* (SD NY 1998) 179 FRD 112, 115, *citing Robidoux v. Celani*, 987 F.2d 931, 936 (2nd Cir. 1993).

Here, the specific facts of this case make certification of the proposed class appropriate. First, and as set forth more fully in Section XIII below, the *maximum value* of the average class members' claim is small enough that a typical attorney would likely be unwilling to pursue such a claim. *Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, 303 F.R.D. 337, 345 (E.D. Cal. 2014) (holding that it is "impracticable to join the potential class members with relatively small claims as plaintiffs in a single lawsuit") (internal quot. omitted) *citing McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*, 268 F.R.D. 670, 675 (E.D. Wa. 2010) (certifying a class consisting of **twenty-seven** individuals and holding that joinder was impractical). Plaintiffs' counsel is also unaware of any other class member initiating an individual lawsuit against Defendants for the wage and hour claims alleged herein, which further suggests that the absent class members lack either the motivation or the means to litigate their individuals claims, or that they have been unable to secure counsel willing to do so.

Further, Plaintiffs' counsel understands based on conversations with Plaintiffs that nearly all of the class members speak Spanish as a first language, and that many speak little to no English at all. In practical experience, individuals who do not speak

English as a primary language are often more hesitant to initiate or participate in litigation. *See also*, Rearick, Daniel J., *Reaching Out to the Most Insular Minorities: A Proposal for Improving Latino Access to the American Legal System*, 39 Harv. C.R.-C.L. L. Rev. 543 (2004). This difficulty is compounded by the fact that while this litigation was pending, Defendants' account with Glendora Canyon ended, leading to the discharge of Plaintiffs and all putative class members still employed as of that date. Thus, in order to seek joinder of each of the absent class members, Plaintiffs' counsel would need to reach out to a class of employees who predominately do not speak English as a first language and none of whom are currently employed by Defendants. These employees live throughout the Los Angeles region, including both in different cities and in different counties, making the class geographically dispersive.

Given the relatively small value of each class member's individual claims and the challenges inherent in seeking joinder of absent class members given the composition of the class, Fed. R. Civ. P. 23(a)(1)'s numerosity requirement is met.

**B.    COMMONALITY AND TYPICALITY**

Fed. R. Civ. P. 23(a)(2) and (3) require that "questions of law or fact [be] common to the class" and that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class," respectively. As the Court has stated in its Order, the commonality requirement is "liberally construed, and the existence of even a single common legal and factual issue is sufficient to satisfy it," and the typicality requirement is "permissive" such that claims need only be "reasonably coextensive" with the absent class members, not "substantively identical." (Dkt. 27 at 6:18-22, 7:22-24.)

As set forth below, Plaintiffs' counsel has analyzed each claim and theory alleged in the Complaint, and determined that Plaintiffs' claims can meet Rule 23(a)'s commonality and typicality requirements, but *only* as to Plaintiffs and the other

employees who worked at Glendora Canyon during the class period, not as to all employees statewide.

### 1.    ROUNDING CLAIM

Plaintiffs' first theory of liability is that Defendants' quarter-hour rounding policy did not meet the "fairness" standard set out in *See's Candy Shops, Inc. v. Superior Court*, 210 Cal.App.4th 889 (2012), which provided that the employer may round time so long as the rounding policy is fair and neutral on its face and is "used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id*. at 907. This uneven rounding can lead to the underpayment of minimum and overtime wages.

An analysis of Defendants' written policies and employee punch data showed that Plaintiffs' rounding theory was not suitable for statewide treatment. First, Defendants' rounding policy was facially valid because it rounded employee time up and down to the nearest quarter hour, until the rounding practice was entirely discontinued by March 1, 2019. Second, the punch data showed significant variances between the employees at Glendora Canyon, including the named Plaintiffs. For example, one Plaintiff (Maria Gutierrez), gained over 24 hours due to rounding, while another Plaintiff (Raquel Rosas), lost over 27 hours due to rounding during the exact same period. Third, employees gained some time in a slight majority of shifts (about 52%), suggesting that the rounding was neutral in practice.

In support of the theory that the rounding was not neutral are the facts that a slight majority of employees did lose time due to rounding (15 of 27), and that employees lost about 51 hours in the aggregate over the three-and-a-half year period analyzed. However, Courts have regularly denied rounding claims in cases with similar facts. *See*, *e.g.*, *Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal.App.5th 1239 (2019) (granting summary judgment to employer where neutral rounding reduced employee time in 54.6% of shifts and increased time in only 26.4% of shifts); *Utnes*

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

*v. Home Depot U.S.A., Inc.*, 2017 WL 5591863, at *2-3 (N.D. Cal. Dec. 4, 2017) (granting summary judgment to employer where 53% of employees were negatively impacted by rounding over a five-year period, and explaining that the figure was "consistent with [the employer's] contention that rounding contemplates the possibility that in any given time period, some employees will have net overcompensation and some will have net undercompensation").

Overall, even though there were some arguments in favor of the rounding theory, it was highly uncertain whether the case could be certified on a statewide basis or whether there was even liability as to this claim, especially given the different effects of rounding between just the named Plaintiffs and that fact that the amount of time lost due to rounding overall was minimal. Accordingly, Plaintiffs' counsel determined that it was best to settle this claim only on behalf of Plaintiffs and other employees at Glendora Canyon.

### 2.    MEAL AND REST BREAK CLAIMS

The meal and rest break claims are based on the theory that employees were regularly not permitted to take meal or rest breaks, and that they were required to remain at the workplace during meal and rest breaks even when they were provided. Pursuant to Cal. Lab. Code § 512, Defendants were obligated to provide a meal break for every five hours of work. As the Supreme Court stated in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1040 (2012), the employer satisfies the obligation to provide meal and rest breaks only if it relieves its employees of all duties, relinquishes control over their activities, and does not impede or discourage them from doing so.

There are several factors that make these claims suitable for settlement as to Glendora Canyon, but not on a statewide basis. First, Defendants' statewide meal and rest break policies complied with California law, so there is no written policy that Plaintiffs could challenge on a statewide basis. Second, Plaintiffs' analysis of

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

Defendants' employee punch records showed a high number of late and/or short meals due either to work volume or their supervisor's demands, but most of the short meal breaks were only short by a few minutes, and Defendants paid meal break premiums when employees took late meals.  Third, pursuant to the CBA at Glendora Canyon, Plaintiffs and other employees at the facility received 15-minute rest breaks rather than the 10-minute minimum, suggesting their claims may not be typical of employees that worked at other facilities.

Plaintiffs contend, however, that the *individual* supervisor who supervised Defendants' employees at Glendora Canyon for the majority of the class period regularly required them to skip or work through meal and rest breaks and that sometimes he required them to remain at the facility on-call during breaks.  This on-call time should have been compensated, but Plaintiffs contend it was not, resulting in more unpaid wage violations.  Plaintiffs contend that the other employees at Glendora Canyon were similarly often required to skip or work through meal and rest breaks as well.

Plaintiffs' counsel's investigation revealed that while Plaintiffs' meal and rest break claims are appropriate for settlement as to employees at Glendora Canyon due to the actions of Defendants' supervisor at that facility, Plaintiffs likely could not certify this claim on a statewide basis, as they would be required to investigate the individual actions of hundreds of supervisors at hundreds of different facilities. [1]

_____

[1] As discussed by defense counsel at the February 24, 2020 preliminary approval hearing, multiple class and representative actions have been filed against Defendants alleging statewide violations over the past several years, and all have been settled on smaller individual facility bases or dismissed outright.  (Dkt. 28 at 5:11-20.)  *See*, *Guzman v. Healthcare Services Group, Inc., et al.*, Los Angeles Superior Court Case No. BC619543 (Complaint alleging statewide wage and hour violations (including uneven rounding) filed on May 5, 2016 by Cohelan Khoury & Singer and Law Offices of Sahag Majarian II; settlement on behalf of only non-exempt employees that worked at plaintiff's facility approved by Judge Gail Ruderman Feuer on January 24, 2018); *Torres v. Healthcare Services Group, Inc.*, Orange County Superior Court Case No. 30-2017-00904917-CU-OE-CJC  (Complaint alleging statewide wage and hour

### 3.    DERIVATIVE CLAIMS

The remaining claims of wage statement violations, unfair competiton, and PAGA penalties are derivative of the above substantive claims.  As the underlying claims meet commonality and typicality for the employees at Glendora Canyon, these claims necessarily meet Rule 23(a)'s commonality and typicality as well.

## C.    ADEQUACY

The final prerequisite for class certification under Rule 23 is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4) As the Court explained in its Order, the adequacy requirement involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with the other class members and (2) will the name plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  (Dkt. 27 at 8:24-9:2, *citing In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *14 (C.D. Cal. Mar. 29, 2011).)

Here, there are no conflicts between the eight named Plaintiffs or the individuals they seek to represent.  Indeed, Plaintiffs and the individuals they seek to represent were all similarly employed as housekeeping, laundry, and janitorial employees at Glendora Canyon, and Plaintiffs are seeking to recover money for all of these individuals based on the claims and theories set forth above.  Further, if this

violations filed on February 22, 2017 by Mahoney Law Group, APC; settlement on behalf of only non-exempt employees that worked at plaintiff's facility approved by Judge Randall J. Sherman on October 12, 2018); *Becerra v. Healthcare Services Group, Inc., et al*., Riverside County Superior Court Case No. RIC1821560 (Complaint alleging statewide wage and hour violations (including uneven rounding) filed on October 19, 2018 by Cohelan Khoury & Singer; Request for Dismissal filed and entered on December 14, 2018); *Ponce, et al. v. HCSG West LLC*, Alameda County Superior Court Case No. RG17877879 (Complaint alleging statewide wage and hour violations (including uneven rounding) filed on October 5, 2017 by Nourmand Law Firm, APC; all class and representative allegations struck on February 13, 2019; dismissal with prejudice entered by Judge Winifred Y. Smith on February 4, 2020).

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

settlement is ultimately approved, class members will receive, on average, in excess of $1,800 as a result of Plaintiffs' efforts.

Further, class counsel is adequate and has rigorously and reasonably prosecuted this action. Fed. R. Civ. Proc. 23(g)(1)(A) requires that Court consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class action, other complex litigation, and the types of claims asserted in the action; (iii) counsel' knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Frontier Law Group meets all these adequacy of counsel requirements. First, Frontier Law Group thoroughly analyzed all of Defendants' relevant statewide policies in effect during the class period and the punch, timesheet, and payroll records of Plaintiffs and all other employees who worked with Plaintiffs at Glendora Canyon during the class period. Based on this review, Frontier Law Group determined that some of the claims alleged in the Complaint had less merit (i.e., the rounding claim) and that some of the claims had more merit (i.e., meal and rest break violations, and unpaid on call time during meal breaks). Frontier Law Center determined that it was in the best interests of its clients and the class members to seek a settlement that results in a significant payout to its clients and the class members in the near future rather than engage in uncertain and protracted statewide litigation without any theory or evidence to support statewide allegations, and which could result in no employees receiving money.

As explained in further detail in the accompanying declaration, Adam Rose has been an attorney since 2000 and has personally been involved in the litigation of at least 150 wage and hour cases arising under California law, including both class action lawsuits and representative PAGA actions. Accordingly, he is extremely knowledgeable about the applicable wage and hour laws at issue in this lawsuit.

In addition to the expertise of Frontier Law Center, this lawsuit was also assessed by Joseph Antonelli and Janelle Carney of the Law Firm of Joseph Antonelli,

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

both of whom associated as counsel of record for Plaintiffs prior to mediation.  (Dkt. 16.)  Mr. Antonelli is one of the foremost class action wage and hour practitioners in California.  Mr. Antonelli also investigated the claims raised in this lawsuit and agreed that the viable claims were limited to Glendora Canyon and that a statewide class action was not feasible, after which his firm disassociated as counsel because the size of the case did not necessitate his further involvement.  (Dkt. 20.)

Finally, Frontier Law Center has committed substantial time and resources to this matter, including interviewing the named plaintiffs, attending court hearings, conducting multiple meet and confers with opposing counsel, analyzing documents and data produced by Defendants, engaging a forensic expert to analyze Defendants' records and prepare an exposure analysis, and engaging a highly experienced mediator, the Hon. Carl West (Ret.).  Frontier Law will continue to commit time and resources to the extent necessary to receive approval of this settlement.

Accordingly, Rule 23(a)(4)'s adequacy of counsel requirement is met.

### D.   PREDOMINANCE

Fed. R. Civ. Proc. 23(b)(3) requires that "questions of law or facts common to class members predominate over any questions affecting only individual members." "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) *quoting Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013).

Here, the proposed class is extremely cohesive because it consists entirely of employees working housekeeping, laundry, and janitorial positions at the same facility and subject to the supervision of the same supervisor.  Further, common questions of law and fact predominate over any individual issues, including (1) the common practice by the supervisor at Glendora Canyon of discouraging and

preventing class members from taking legally compliant meal and rest breaks, (2) the common practice by the supervisor requiring class members to work off-the-clock during meal breaks, (3) the common practice of Defendants providing inaccurate wage statements to class members because they did not accurately state the number of hours that class members actually worked, and (4) the common question of whether class members are additionally entitled to derivative penalties under the PAGA. The cohesiveness of the class and common questions of fact and law predominate over any individual questions, such as an individual class member's exact measure of damages.

**E.    SUPERIORITY**

Finally, Fed. R. Civ. Proc. 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Pertinent factors in assessing a class action is superior include (1) class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class action. Fed. R. Civ. Proc. 23(b)(3)(A)-(D).

Here, a class action is superior. First, individual class members have little interest in individually controlling the prosecution of separate actions given the relatively small recovery for each class member. Second, there are no other actions previously filed against Defendants by the putative class members for these same claims. Third, the Central District of California is the desirable forum, as all the class members worked for Defendants in Los Angeles County, which is encompassed by the Central District. Fourth and finally, a class action is manageable because the proposed class size is relatively small compared to other class actions, and were the case were to proceed to trial, the proximity of the witnesses and evidence to the court

would make the case manageable. Accordingly, a class action is the superior method of resolving this lawsuit.

## III.   EVALUATION OF PROPOSED SETTLEMENT

In evaluating the range of possible approval, which focuses on substantive fairness and adequacy, courts consider plaintiff's expected recovery balanced against the value of the settlement offer considering the risks of further litigation. *In re Tableware Antitrust Litig*., 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007).

### A.   COSTS, RISKS, AND POSSIBLE DELAY OF TRIAL AND APPEAL

There are several risks in continuing to litigate this lawsuit.  First, and for the reasons set forth above, there is a risk that Plaintiffs would not have been able to certify their claims on a statewide basis or prevail at trial on these claims.  The rounding claim was uncertain and the data analyzed suggested that it affected different employees differently, and may not have violated *See's Candy Shops, Inc.* For the meal and rest break claims, Defendants had lawful written policies, paid meal period premiums, and may have been able to offer declarations from other employees claiming that they did receive meal and rest breaks. Another risk was that certain Plaintiffs and class members have signed arbitration agreements, and their claims might have been compelled to proceed in arbitration, thereby potentially excluding them from any recovery in this matter.  Finally, litigation through class certification, trial, and appeals would take years, leading to a long delay in the possibility of any payment to class members.

### B.   THE RELIEF PROVIDED TO THE CLASS IS ADEQUATE

With these risks in mind, the next step is to evaluate the terms of the settlement agreement. *Miller v. Ghirardelli Chocolate Co*., No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015). Plaintiffs' counsel has  analyzed the potential

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

monetary value of the claims if they were to succeed at trial. The data used for this analysis incorporated the complete punch and payroll records for the class members.

The gross settlement amount of $137,500 is certainly within the realm of reasonableness to compensate the class members for their substantive missed break and unpaid wage claims, as well as the derivative claims for wage statement violations and PAGA penalties.  With the approximately 3,100 workweeks during the class period and an estimated net settlement amount of $50,667.67, the 27 class members will receive an average settlement amount of about $1,876.54, which is well within the range of their possible recovery.

Determining whether the settlement falls in the range of reasonableness also requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount.  *See In re High–Tech Emp. Antitrust Litig*., 2014 WL 3917126, at *4 (N.D. Cal. No. 11-cv-02509-LHK Aug. 8, 2014).

As set forth in the moving papers, Plaintiffs' counsel estimates—based on its analysis of the claims and theories set forth and analyzed above—that the maximum amount likely to be recoverable at trial for the employees at Glendora Canyon is about $300,000  (Dkt. 23-1, ¶ 14.)  More specifically, the *maximum* amount likely to recoverable at trial is $340,870.69.  This amount was calculated as follows:

Meal and Rest Break Premiums: Defendants' records show that employees worked approximately 3,100 workweeks during the class period and earned an average straight-time rate of $13.35 per hour.  Based on conversations with the eight named Plaintiffs, class counsel estimates that Plaintiffs and the other employees at Glendora Canyon were, on average, each denied fully compliant meal and rest breaks one and one-half times per week.  Thus, the maximum expected recovery for the meal break claim is about $62,077.50 (3,100 workweeks x 1.5 meal break violations/workweek x $13.35/violation) and the maximum expected recovery for the

rest break claim is also about $62,077.50 (3,100 workweeks x 1.5 rest break violations/workweek x $13.35/violation).

Underpaid Wage Claim: Plaintiffs contend that they are additionally owed for each of the one and a half half-hour meal periods per week in which they were required to remain on call or work off-the-clock.  Thus, the maximum expected recovery for their underpaid wage claim is about $31,038.75 (3,100 workweeks x 1.5 meal break violations/workweek x 0.5 hour pay/violation x $13.35/hour).

Wage Statement Claim:  Plaintiffs contend that all wage statements provided during the year prior to the filing of the Complaint through May 31, 2019 (at which point all class members were terminated) were non-compliant.  Under Section 226(e), the penalty for an initial violation is $50 and the penalty for all subsequent violations is $100.  Defendants' payroll records show that eighteen (18) class members worked 475 pay periods during this timeframe, such that the maximum expected recovery for the wage statement claim is $46,600 ((18 initial violations x $50) + (457 subsequent violations x $100)).

PAGA Penalties:  Plaintiffs contend that they can recover a PAGA penalty for each pay period during which one of the above violations occurred.  Plaintiffs and other aggrieved employees worked approximately 545 pay period during the PAGA period (i.e., one year and 65 days before the filing of the Complaint through May 31, 2019).  Assuming that Plaintiffs can recover the $100 penalty per pay period set forth in Cal. Lab. Code § 2699(f)(2), the maximum expected recovery for Plaintiffs' PAGA claim is $54,500 (545 pay periods x $100/pay period).  Notably, however, courts routinely reduce the maximum penalty amounts available under the PAGA where awarding the full penalty would be "unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h); *see, e.g., Carrington v. Starbucks Corp.*, 30 Cal.App.5th 504 (2018) (upholding trial court's award of only $5 in PAGA penalties per pay period following a bench trial); *Fleming v. Covidien*, 2011 WL 7563047, *4 (C.D. Cal. 2011) (reducing maximum PAGA penalties by over 82% after a bench trial).

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

<u>Attorneys' Fees</u>:  Finally, Plaintiffs contend that they can recover attorneys' fees to the extent permitted by statute.  Assuming they can recover fees equal to 33% of the total amount recovered above ($256,293.75), the amount of fees recoverable would equal $84,576.94.

This settlement provides for $137,500, an amount worth 40% of the projected maximum recovery of $340,870.69. Given the risks, uncertainties, and delay associated with litigation, Plaintiffs' counsel believes that this amount is well within the range of a reasonable settlement.

## IV.    THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES

A court reviewing a proposed settlement also assesses whether there are obvious deficiencies in the settlement agreement that could include an overbroad release, insufficient notice, inadequate form of payment, or a cy pres beneficiary without a sufficient connection to the class and underlying claims. See, e.g., *Custom LED, LLC v. eBay, Inc*., No. 12-cv-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013).

Here, the class members will only release only the claims that were alleged in the complaint or which could have been alleged based on the allegations in the complaint. The parties have constructed a formula for payments based on each Class Member's pro rata share of the total workweeks worked at Glendora Canyon during the settlement period, ensuring an equitable distribution of settlement funds. Additionally, the notice contains all the required information to the class members in an easy to read format.

## V.    THE SETTLEMENT DOES NOT UNFAIRLY GRANT PREFERENTIAL TREATMENT TO ANY CLASS MEMBERS

Finally, a court assessing a proposed settlement agreement must determine whether the settlement allocation unfairly benefits certain class members. *Tijero v.*

PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL

*Aaron Bros., Inc*., No. C10-01089-SBA, 2013 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Vinh Nguyen v. Radient Pharm. Corp*., No. 11-cv-00406, 2014 WL 18022393, at *5 (C.D. Cal. May 6, 2014).

Here, the class members will receive settlement amounts based on a pro rata number of workweeks each class member worked during the settlement class period. Plaintiffs submit that this is a fair formula, and there is no preferential treatment to any class member.

## VI.    CONCLUSION

Based on the above arguments and the attached declaration of Adam Rose and its attached exhibits (the settlement agreement and the notice to class members), Plaintiffs respectfully requests the court to grant the motion for preliminary approval, allow the parties to proceed with issuing notice to the class members, and to schedule a date for a final approval hearing.


DATED: April 27, 2020          **FRONTIER LAW CENTER**

/s/Adam Rose
Adam Rose
Emanuel Starr
Attorneys for Plaintiffs
RUBEN GARCIA, GILBERTO LOPEZ, LUIS
HERNANDEZ, MARIA GUTIERREZ, MARIA
MOTA, NORA LUCHA, RAQUEL ROSAS, and
SOIRA PEREZ,